FILED
2011 May-26  PM 04:08
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| GWENDOLYNE D. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 10-G-1301-NE |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION

The plaintiff, Gwendolyne D. Brown, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

### STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether she has a severe impairment;

(3)     whether her impairment meets or equals one listed by the Secretary;

(4)     whether the claimant can perform her past work; and

(5)    whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

In the instant case,  ALJ Patrick R. Digby determined the plaintiff met the first two tests, but concluded that while the plaintiff's low back syndrome, lumbar myofasciitis, fluctuating visual acuity due to blood sugar control, obesity, and mental retardation are "severe" in combination, they did not meet or medically equal a listed impairment.  [R. 22].  The ALJ found the plaintiff unable to perform her past relevant work. [R. 32].  Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do."  Foote, at 1559.

## WHEN ADDITIONAL EVIDENCE IS SUBMITTED
## TO THE APPEALS COUNCIL

Claimants are permitted to submit new evidence at each step of the review process, 20 C.F.R. § 404.900(b)("In each step of the review process, you may present any

information you feel is helpful to your case.  [W]e will consider at each step of the review process any information you present as well as all the information in our records.").  The Appeals Council is required to consider the entire record, "including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision."  20 C.F.R. § 404.970(b); Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994).

To be material the proffered evidence must be "relevant and probative so that there is a reasonable possibility that it would change the administrative result." Caulder, at 877.  A review of the evidence submitted to the Appeals Council demonstrates that it meets all of the requirements of the regulations for consideration by the Appeals Council.  Because the Appeals Council actually considered the evidence, the court will only review whether the Appeals Council committed reversible error in refusing to review the plaintiff's case in light of that evidence.  The Regulations require the Appeals council to "review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record."  20 C.F.R. § 404.970(b).

Moreover, a "district court must consider evidence not submitted to the administrative law judge but considered by the Appeals Council when the court reviews the Commissioner's final decision denying Social Security benefits."  Ingram v. Astrue, 496 F.3d 1253, 1258 (11th Cir. 2007).  "[W]hen a claimant properly presents new

4

evidence to the Appeals Council, a reviewing court must consider whether that new

evidence renders the denial of benefits erroneous." Ingram at 1262.

> In Bowen v. Heckler, the claimant filed evidence in the Appeals Council,
> which considered the evidence but denied review.  748 F.2d 629 (11th Cir.
> 1984).  We held that "the Appeals Council did not adequately evaluate the
> additional evidence" and, citing earlier precedents, reasoned that "[w]e have
> previously been unable to hold that the Secretary's findings were supported
> by substantial evidence under circumstances such as these."  Id. at 634. . . .
> After quoting sentence four of section 405(g) in full and discussing it at
> length, we concluded that a reversal of the final decision of the
> Commissioner was appropriate.  We held that "the Appeals Council should
> have awarded Bowen disability insurance benefits," and we remanded to the
> district court "for entry of an order . . . that such an award be made."  Id. at
> 637.

Ingram at 1263.

## DISCUSSION

The plaintiff claims disability under Listing 12.05B, or, in the alternative

12.05C.  In general, a claimant meets the requirement for "presumptive disability" under

Listing 12.05B by presenting a valid IQ score of 59 or less.  Listing 12.05C requires that

the claimant have "A valid verbal, performance, or full-scale I.Q. of 60 through 70 and a

physical or other mental impairment imposing additional and significant work-related

limitation of function."  Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993)(quoting

Listing 12.05C).  When considering whether the plaintiff has a physical or mental

impairment imposing significant work-related limitation of function in addition to a low

verbal scale I.Q., the Commissioner must consider the plaintiff's impairments in

combination.  Davis 985 F.2d at 533.  The issue of what constitutes "a physical or other

mental impairment imposing additional and significant work-related limitation of

function" was addressed in Edwards by Edwards v. Heckler:

>An impairment imposes significant limitations when its effect on a
>claimant's ability to perform "basic work activities" is more than slight or
>minimal.  The question under Listing 12.05C, however, is not whether the
>impairment is in and of itself disabling, thus, "significant" requires
>something less than severe within the meaning of § 404.1520© [of the
>Commissioner's Regulations].

755 F.2d 1513, 1515 (11th Cir. 1985)(considering whether the presence of chronic

obstructive lung disease and exercise induced asthma provided a sufficient additional

impairment to meet the second prong of Listing 12.05C.).  The second part of the Listing,

therefore, imposes a less stringent requirement than that imposed by 20 C.F.R.

§ 404.1520©.  Section 404.1520 sets forth the five-step sequential process by which a

claimant's disability is evaluated.  Section 404.1520© defines "severe impairment" to

require that the impairment or combination of impairments significantly limit the

claimant's physical or mental ability to do basic work activities.

In addition to a valid I.Q. score meeting the requirements of Listing 12.05C,

a plaintiff must also satisfy the diagnostic description in the introductory paragraph of

Listing 12.05C.  Listing 12.00A ("If your impairment satisfies the diagnostic description

in the introductory paragraph and any one of the four sets of criteria, we will find that

your impairment meets the listing.")  The introductory paragraph to Listing 12.05C is as

follows:

6

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.  The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

Therefore, a claimant must have manifested "significantly subaverage general intellectual functioning with deficits in adaptive functioning" prior to the age of 22 in order to meet Listing 12.05C.  In this circuit, it is presumed that a person's I.Q. remains fairly constant throughout his life and a valid I.Q. test meeting the Listing criteria creates a rebuttable presumption that the condition manifested itself before age twenty-two.  Hodges v. Barnhart, 276 F.3d 1265, 1268-69  (11th Cir. 2001).  The Hodges court recognized that although this circuit had not formally recognized this presumption, it had been implicitly recognized in Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992), that when a claimant presents a valid I.Q. score meeting the Listing criteria, he is presumptively disabled under the Listing if the other requirements of the Listing have been met.  Hodges, 276 F.3d at 1269.

The plaintiff in this case was 30 years old at the time of ALJ Patrick R. Digby's decision, who found that the plaintiff had the severe impairments of "low back syndrome, lumbar myofasciitis, fluctuating visual acuity due to blood sugar control, obesity, and mental retardation." [R. 20].  She was seen on September 1, 2009, by John R. Goff, Ph.D., at the request of her attorney.  Dr. Goff stated:

> This is a disability matter.  Dissimulation is, therefore, potentially an issue.
> In that regard I administered the 21-item Memory Test, a test for
> dissimulation of cognitive deficits.  She obtained a forced choice
> recognition task score of 14.  Scores above 12 suggest a straightforward
> performance, and I think we do have such a performance here despite the
> fact that the scores are quite low.

[R. 434].  Dr. Goff administered the Wechsler Adult Intelligence Scale (WAIS-IV), the

Reitan-Indiana Aphasia Screening Test, informal clock drawing tasks and the fourth

edition of the Wide Range Achievement Test (WRAT-IV):

> On the administration of the WAIS-IV she obtained a full scale IQ score of
> 58.  That score falls toward the middle of the mildly retarded range of
> psychometric intelligence.  The index scores obtained were as follows:
> Verbal Comprehension 66/1, Perceptual Reasoning 65/1, Working Memory
> 63/1 and Processing Speed 52/1.  All of these scores fall within the mildly
> retarded range.  The General Ability Index would be 51 which also falls
> within the mildly retarded range.  That probably is a better estimate of her
> overall functioning.

[R. 435].  Dr. Goff found that "Her handwriting is readable.  She was able to read a

sentence at the second grade level but not at the fifth grade level."  Id.  Her spelling, math

computation and word reading scores were at the second grade level.  Id.  Dr. Goff's

impression was:

> I think this lady is mentally retarded.  We have a history of early school
> departure and grade repetition.  She does not recall being in any special
> education classes but I would suggest that her transcript might provide
> some insights into her academic achievement levels early on.  She says that
> she never learned how to read and write.  That seems to be the case since
> she is functionally illiterate currently.
>
> She obtains IQ test scores within the mildly retarded range of psychometric
> intelligence and actually towards the middle of that range.  She has had
> some vocational activity.  I am not sure how successful she has been.  She

worked for a while stocking shelves at a commissary at the Great Lakes Naval Station and then she worked at a convenience store for a while, but she has not maintained. She has a lot of problems with her back and her legs and she has very poorly controlled diabetes mellitus and a number of other health related issues, and basically she tells us that she is not able to maintain because of those health issues. I think there are probably some issues related to her cognitive deficits which interfere substantially as well.

During this examination she had difficulty understanding, following and carrying out all but the very simplest of instructions. She would have difficulty remembering even simple instructions. She gives the impression of being rather slow and would be seen that way by supervisors. There are obviously physical difficulties which interfere with her ability to deal with the stresses and pressures of the workplace.

CONCLUSIONS

Examination of the psychometric test data yields the following conclusions and/or inferences.

1.    She appears to be functioning within the mildly retarded range of psychometric intelligence.

2.    She is functionally illiterate.

3.    I am sure there are other adaptive skills deficits as well.

4.    She does have a history of grade repetition and early school departure. My suspicion is that she may have been identified during the developmental period and if not she should have been.

5.    She has a lot of physical difficulties.

6.    Diagnosis:

       Axis I:        Reading Disorder

       Axis II:       Mental Retardation, Mild

[R. 436].  Dr. Goff found extreme or marked limitations in 11of 17 work-related areas.

[R. 438-39].

The ALJ refused to credit Dr. Goff's opinion because:

. . . that examiner, Dr. Goff, neither had the claimant's educational records showing she completed a 9th grade education in regular classes nor the claimant's work history showing she successfully worked including semiskilled work reporting no loss of jobs due to her educational achievement but rather due to physical conditions.  It is emphasized that the claimant underwent the examination that formed the basis of the opinion in question not in attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal.  Although such evidence is [sic] deserves consideration, the context in which it was produced cannot be entirely ignored.  The undersigned gives no weight to Dr. Goff's opinion the claimant is currently functionally illiterate as that conclusion is clearly inconsistent with other evidence of record including living independently with an infant daughter in her care.  Furthermore, no other physician examining or caring for the claimant has observed or commented on any noticeable or obvious intellectual deficits that one would expect of a functionally illiterate individual and no physician has found the claimant unable to comprehend or understand her medical care or medical advice.  Even while hospitalized in connection with instruction on insulin use for her new onset gestational diabetes in 2007 and then at the time of the birth of her daughter in 2008 no physician or medical personnel treating the claimant found any intellectual or cognitive deficits to understanding or comprehending her insulin regimen or noted concern over her care of her infant daughter.  This evidence does little to support functional illiteracy and mental retardation.  While Dr. Goff diagnosed mental retardation based on testing of unknown validity resulting in a full-scale IQ below 60, such diagnosis is inconsistent with her lack of deficits of adaptive functioning as discussed elsewhere in this decision and appears to be based solely on the obtained IQ scores with him having no access to the evidence of the claimant's educational or vocational history.

[R. 23].   For the reasons stated below, the ALJ's decision is not supported by substantial

evidence.

On November 4, 2009, after the ALJ's decision refusing to credit Dr. Goff's opinion and denying the plaintiff benefits, Dr. Goff issued an addendum to his psychological evaluation::

> When I saw this lady previously I did have a number of records which are reviewed in that report. I did not have any school records at that time and made mention of that. Mr. Coplin [plaintiff's attorney] has conveyed school records to me at this point. I also did not have a work history report from the Agency. I have that now. I also have a notice of an unfavorable decision rendered by the Honorable Patrick R. Digby, an administrative law judge with the Office of Hearings and Appeals in Florence, Alabama. That decision, which is an unfavorable decision, cites my work heavily particularly under Section 4 of the decision, and I will refer to that more thoroughly below.

[R. 440]. Dr. Goff commented on ALJ Digby's decision. As this court will not attempt to summarize the comments, which speak squarely, thoroughly and cogently to the ALJ's reasons for discrediting Dr. Goff, the court will quote them in their entirety:

> The ruling here seems to be somewhat contradictory in my view, and it actually misstates my position in regard to the information I collected from this lady. That is why I feel that it is necessary to comment on it.
>
> The Court's ruling seems to involve three areas of disagreement with my report including a failure to take into account an educational record which somehow or another contradicts mental retardation or illiteracy, a lack of correspondence between her perceived intellectual capacities and the work she had done and lastly the validity of the obtained assessment. I will discuss these issues separately.
>
> 1.    This lady attended Paramount High School which is a rural high school in Boligee, Alabama. I am well familiar with that school system, and I should note that it is certainly not unusual for me to encounter individuals who have actually graduated from that institution who are functionally illiterate and who are mildly mentally retarded. The decision here attributes this lady's very poor academic performance throughout the entire academic career we

11

have records about to the fact that she missed a lot of days in school when she was in the ninth grade.  Her marks in the seventh and eighth grade were poor and would be in most cases failing marks.  She actually repeated the ninth grade because she failed and she was failing the ninth grade the second time when she withdrew.  According to her indication to me and according to the transcript she never attended the tenth grade.

The fact that she was in regular classes is not an indication of her intellectual level or her reading skill.  In many parts of rural Alabama no special education classes were available for students, and quite frequently the parents of young people in rural schools would not allow their children to be served in special education programs, so the fact that she did not attend a special education program does not mean that she did not need to attend such a program.

The ruling makes quite an issue about "functional illiteracy".  My assessment in that regard was based on the administration of a standardized reading test.  The claimant obtained a grade level equivalency score at about the ending second grade level on that test.  There is absolutely nothing in the transcript to suggest that her reading skills are any better than that or that they were any better than that previously.  That has to be an assumption on the part of the Court.  The decision makes some statements which do not make much sense especially the statement to the effect that the fact that she was able to attend to her infant daughter indicates that she is not functionally illiterate.  The recent studies by the National Center of Educational Statistics show that the percentage of people 16 and older who are functionally illiterate in Alabama is currently about 15% and in rural counties is closer to 20-25%, so 1 in 4 or 5 individuals in rural counties in Alabama are functionally illiterate.  That does not mean that they are not able to take care of their children.

The ruling goes on to say that she is unlikely to be functionally illiterate because none of the doctors or nurses who attended to her during her pregnancy or during the birth of her child mentioned that she was functionally illiterate.  Again, in rural areas of Alabama 1 in 4 or 1 in 5 of the individuals treated in any particular clinic or by any particular physician or nurse are going to be functionally illiterate.  It is not something that typically is assessed by physicians and nurses,

and it is not something that is typically charted by physicians and nurses.  That is exactly why consultative examinations in regard to these issues are necessary and required.  If we just assume that attending physicians are going to just tell us whether or not people can read and write, there is going to be an extremely large error rate.  In essence, "absence of evidence is not evidence of absence".  And the absence of such notes in her file has nothing to say about her reading skills.

2.      There is admittedly something of an incompatibility between the statements that she makes about her employment and her apparent intellectual abilities.  In that regard it should be kept in mind that one cannot diagnose mental retardation based on what the individual <u>can do</u>.  The diagnosis is based on what people cannot do.  It also cannot be based on subjective statements on the part of the individual.  Very few people are going to go into a court room or any other venue and announce that they are mentally retarded.  Hence, it is necessary to draw those assumptions from intellectual assessment and as the Court does point out, the presence or absence of adaptive skills deficits.  In this instance the adaptive skills deficits are represented by her poor scores in regard to academic areas which in my view are poor enough so as to suggest deficits in functional academics including reading and math skills poor enough so that she would not be able to manage complex financial kinds of transactions.  She apparently did work as a cashier.  She told me that the place where she worked had pictures on the cash register, and we cannot really determine the extent to which she operated the cash register anyway.  She indicated to me that she mostly stocked shelves.

3.      The ruling mentions that I did not state that I thought that my test results were valid.  I would note that this is not the case.  I did indicate that I thought that this lady was putting forth genuine effort.  That is typically what is required for a valid assessment.  I have been doing this for many years, and if I thought there was an invalidity issue I would have made mention of that fact.  There was nothing in this lady's presentation to suggest that she was not putting forth a genuine effort.  There were no bizarre responses.  There were no intentionally poor responses, and she did obtain an acceptable score on a test of symptom validity and response bias.  Hence, I had no reason to think that the scores are invalid.  If the Court thinks they are invalid because she was not in special education classes or

because her physician did not make a note to the effect that she was
not a reader or that one of the jobs that she had was not particularly
compatible with my diagnosis, then that is a different issue; but the
psychologist who is performing the examination has to determine the
validity of the examination.  It cannot be determined by a third party
at some later date.

I hope the information herein contained is some assistance.  I hasten to
point out that my response to these issues is provided for informational
purposes.  I am aware that matters in regard to such determinations are the
province of the Court.  I think it is important though that particularly these
issues in regard to functional illiteracy be understood in their entirety since
upward to 15 to 20% of the population in the State of Alabama is
functionally illiterate, and understanding that definition would seem to be to
be an extremely important issue.

[R. 442-44](emphasis in original)  Because Dr. Goff is a specialist in the field of

neuropsychology, his opinion is entitled to more weight in this area.[1]  The thoroughness

of his report and supporting testing also entitles it to greater weight.[2]  The court also notes

that Dr. Goff has also been used extensively by the Social Security Administration as a

consulting examiner.  The ALJ's decision to refuse to credit Dr. Goff's diagnosis renders

it unsupported by substantial evidence.

Despite the excellent clarification of his examination by Dr. Goff, the

Appeals Council refused to disturb the ALJ's ruling.  Although reversal of this case is

warranted, remand would also be proper because of the existence of this new and material

_____

[1]  "We generally give more weight to the opinion of a specialist about medical
issues related to his or her area of specialty than to the opinion of a source who is not a
medical specialist."  20 C.F.R. § 404.1527(d)5)

[2]  <u>See</u> 20 C.F.R. § 404.1527(d)(3)(well supported opinions entitled to more
weight).

evidence.  The plaintiff submitted Dr. Goff's addendum report to the Appeals Council, which issued a boilerplate denial.

"[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether the new evidence renders the denial of benefits erroneous." Ingram at 1262.   The Appeals Council committed reversible error in failing to either review the plaintiff's case or to remand it for further proceedings.

## CONCLUSION

This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed.  Id.   Therefore, the plaintiff is disabled within the meaning of the Social Security Act.  An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 26 May 2011.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.

15